IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CYNTHIA A. CASALINA

        Plaintiff,

v.                                          Civ. No. 13-535 KG/WPL

ERNEST MONIZ, *in his capacity as*
*the Secretary of Energy*,

        Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court upon Defendant Ernest Moniz's Motion for Summary Judgment ("Motion"), (Doc. 55); Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response"), (Doc. 60); and Defendant's Reply in Support of Defendant's Motion for Summary Judgment ("Reply"). (Doc. 62). Having reviewed the Motion, the accompanying briefs, and the evidence of record, the Court GRANTS the Motion.

**I.**    **Plaintiff's Amended Complaint**

Plaintiff Cynthia A. Casalina ("Plaintiff") filed her First Amended Complaint ("Amended Complaint") on March 10, 2014, alleging discrimination and retaliation claims against Mr. Ernest Moniz, in his capacity as Secretary of the United States Department of Energy ("Defendant"). (Doc. 17). Her claims arise from the pay disparity between her and her male counterpart, despite the fact that they allegedly perform equal work. In Count I, Plaintiff first alleges claims of discrimination on the basis of sex and retaliation in violation of Title VII, 42 U.S.C. § 2000E-5. In Count II, she alleges violations of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1).

Defendant now moves for summary judgment on all of Plaintiff's claims.  Plaintiff opposes the Motion in its entirety.

## II.      Standard of Review

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the non-movant.  *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir. 1991).  The movant bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1079 (10th Cir. 1999).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted).  The non-movant may not avoid summary judgment by resting upon the mere allegations or denials of its pleadings.  *Bacchus Indus., Inc.*, 939 F.2d at 891.

## III.     Background[1]

In August 2008, Plaintiff began working as a Safety and Occupational Health Manager/NQ/03-0018 at the Los Alamos Field Office ("LAFO") of the National Nuclear Security Administration ("NNSA") within the Department of Energy ("DOE").  (Doc. 55-11);

---

[1] Unless otherwise noted, the summary of material facts is undisputed.

2

(Doc. 55-14) at 3.  Earlier that year, NNSA launched a performance-based pay plan known as the Demonstration Project ("DEMO"), as authorized by Chapter 47, Title 5 of the United States Code.  (Doc. 55-12) at 4.  The DEMO pay plan applies to most NNSA positions, with some exceptions.  *Id*. at 6.  As a result, upon accepting her position at LAFO, Plaintiff was compensated under the DEMO pay plan, Pay Band 3, which is equivalent to a GS-13.  (Doc. 55-14) at 3; (Doc. 55-13).

Prior to applying for and accepting her current position, Plaintiff applied and interviewed for the position of General Engineer/Physical Scientist at LAFO.  (Doc. 55-6).  At the time, Plaintiff had approximately twelve years of experience working as an Industrial Hygienist for several federal agencies, including the Department of Labor, the National Park Service, the U.S. Navy Hospital in Naples, Italy, and the Naval Medical Center Oakland.  (Doc. 55-7) at 10–14. Although Plaintiff originally was put on the certification list for the position, the job announcement was later canceled and withdrawn.  (Doc. 55-6) at 1.  The parties dispute whether Plaintiff originally was qualified for this position and the circumstances surrounding the withdrawal of the announcement.  Plaintiff then applied for and accepted the Safety and Occupational Health Manager position in October 2007. (Doc. 55-11); (Doc. 55-14) at 3.

In performing her duties as Safety and Occupational Health Manager, Plaintiff works closely with Dean Decker ("Decker"), jointly overseeing the Occupational Health and Safety programs at LAFO.  *See* (Doc. 60-21) at 3:13; (Doc. 60-5) at 13:16–25, 14:16–25, 15:1–25, 29:13–25, 30: 1–17; (Doc. 60-4) at 26:1–25, 27:1, 27:16–20; (Doc. 60-8) at 49:21–25, 50:1–6; (Doc. 55-15) at 3.

Decker works at LAFO as a General Engineer/Physical Scientist, Occupational Series 1301.  (Doc. 55-1) at 51:12–23; (Doc. 55-2).  Prior to working at LAFO, Decker earned his

undergraduate degree in biological sciences and his masters of science in environmental health. (Doc. 55-1) at 33:19–34:3.  Since 1981, Decker has worked as an Industrial Hygienist for various federal entities, transitioning to the NNSA at its Oakland Operations Office in 1994.  Doc. 55-1 at 49:22–24, 54:2–5; (Doc. 55-2).  In 2003, Decker began working at LAFO.  (Doc. 55-2).  As a General Engineer/Physical Scientist at LAFO, Decker was placed in the Excepted Service pay program and was initially classified as a Pay Band 4, which is equivalent to a GS-14/15.  (Doc. 55-2); (Doc. 55-3) at 5, 6; (Doc. 55-4).  The Excepted Service was implemented in 2002 in order to "establish no more than 300 scientific, engineering, and technical positions in the Administration."  (Doc. 55-3) at 1.  The policy was designed to "recruit and retain highly qualified scientific, engineering, and technical personnel to support the missions of NNSA. . . . without discriminating based on race, color, national origin, sex, age, religion, marital status, physical or mental disability, sexual orientation, or political affiliation."  *Id*. at 2.  Excepted Service employees are exempted from the DEMO pay plan.  (Doc. 55-12) at 6.

Plaintiff's predecessor, Dave Barber ("Barber"), similarly oversaw the Occupational Health and Safety programs for the LAFO with Decker from 2003 through 2007.  (Doc. 55-1) at 56:15–24; (Doc. 55-5) at 11:11–23, 15:16–17:5.  Barber was originally hired as an Industrial Hygienist at LAFO in 2001, and was classified as a GS-14.  (Doc. 55-5) at 7:16–8:2.  At the time Barber was hired, he had twenty-two years of experience as an Industrial Hygienist, six of which were through a contract with LAFO.  (Doc. 55-5) at 8:7–19, 42:18.  As an Industrial Hygienist, Barber was ineligible for the Excepted Service and, after the implementation of the DEMO project, was converted to the DEMO pay plan in connection with that position.  (Doc. 62-3) at 46:19–24, 35:11–21, 36:19–21; 37:5–18.

During Plaintiff's employment at LAFO, Plaintiff's supervisor, Kevin Smith, told her that it is difficult to find "technical women," when expressing his frustrations that no females had applied to a business manager position. (Doc. 60-12) at 6. In addition, Plaintiff's direct manager, Chris Keilers, used the word "gents" to address an email sent to two males and copied to other employees, including Plaintiff. *Id*. Other female employees at LAFO have received comments such as "she didn't look like an astrophysicist," and have prompted the creation of a "G-rated" lunch to accommodate a female employee who felt a lunch meeting included inappropriate jokes and conversations. *Id*. at 7.

Upon discovery that she and Decker were not compensated equally, Plaintiff raised equal pay claims within NNSA and the Equal Employment Opportunity Commission ("EEOC"). *See* (Doc. 55-17). The EEOC dismissed any claim that Plaintiff's position was initially improperly classified on the grounds that it was untimely. (Doc. 55-17) at 3 n.3, 9. Here, Plaintiff's Amended Complaint does not allege claims of discrimination in initially classifying her as a Safety and Occupational Health Manager. Rather, Plaintiff bases her claims upon the wage disparity between her and Decker.

In response to the discrimination allegations, Contract Classification Specialist Valentin Varela, Senior Personnel Analyst, Data Research Associates, Inc., Albuquerque, New Mexico ("Varela"), and Classification Specialist Paula Puente-Bekis, DOE/NNSA Human Resources ("Puente-Bekis") completed a desk audit of Plaintiff's classification as Safety and Occupational Health Manager in January 2011. (Doc. 55-15). Puente-Bekis and Varela conducted interviews with Plaintiff and Decker and their supervisor, reviewed job descriptions and evaluated Plaintiff's position in detail by comparing it to the governing classification standards. (Doc. 55-16) at 29:14–30:20, 42:3–45:3. While the desk audit concluded that the work performed by

Plaintiff was consistent with that of an Occupational Safety and Health Management-0018 at the GS Level 14 and that Decker served a more scientific and technical role, it also noted the significant overlap between Plaintiff and Decker's duties as they are actually performed.  (Doc. 55-15) at 4, 5.  Plaintiff disputes the weight to be given to the desk audit, and suggests that it was unable to make conclusions about all aspects of Plaintiff's daily work.

Thereafter, supervisors changed the way they delegated assignments to Plaintiff and Decker.  Specifically, the Los Alamos Site Office Manager emailed Decker directly, copying Plaintiff and giving Decker direct assignments, whereas previously, the Site Manager left it to Plaintiff, Decker, and their direct supervisor to delegate tasks.  *Id*. at 2:9.  In addition, Decker has been directly assigned to other projects and assessments, which Plaintiff and Decker would normally share.  (Doc. 60-21) at 2:10.  Finally, when Plaintiff and Decker's manager, Chris Keilers is on leave, only Decker is asked to cover his duties in his absence, unlike before when Plaintiff and Decker would usually share that duty.  *Id*.

## IV.    Analysis

In his Motion, Defendant contends that he is entitled to summary judgment as a matter of law on the basis that Plaintiff has failed to establish a *prima facie* case of discrimination under the EPA and Title VII, since Plaintiff and Decker do not perform substantially equal or sufficiently similar work for unequal pay.  Additionally, Defendant argues that he has provided legitimate, non-discriminatory reasons for any pay disparity, which Plaintiff cannot show are pretextual.  Finally, Defendant maintains that Plaintiff's retaliation claim under Title VII must also fail, as she has not provided any evidence of an adverse employment action since confronting her supervisors at the NNSA and filing her EEOC complaint.

Plaintiff responds that she has created a genuine dispute of material fact as to whether she and Decker perform substantially equal work for unequal pay.  Plaintiff further argues that she also has created a genuine dispute as to whether Defendant's reasons for the pay disparity are pretextual.  Lastly, Plaintiff contends that she has provided evidence of adverse actions in support of her retaliation claim.

The Court will first consider Plaintiff's claims under the EPA, followed by her claims of discrimination and retaliation under Title VII.

A.  *Plaintiff's EPA Claim*

The EPA provides, in pertinent part:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of the subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

Claims brought under the EPA proceed in two steps.  *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006).  "First, the plaintiff must establish a *prima facie* case of discrimination by demonstrating that two employees of the opposite sex were paid differently for performing substantially equal work."  *Id*.  Having done so, "the burden of *persuasion* then shifts to the defendant to prove that the wage disparity was justified by one of four permissible reasons," as articulated in the statute.  *Id*. (citing *Tidwell v. Fort Howard Corp.,* 989 F.2d 406,

409 (10th Cir. 1993).  If a defendant fails to meet this burden, the plaintiff will prevail on her *prima facie* case.  *Tidwell*, 989 F.2d at 409.

Here, Defendant first argues that Plaintiff has failed to establish that she and Decker perform substantially equal work and, second, that Defendant has proven that the wage disparity is justified by a factor other than sex. The Court will address both of these arguments in turn.

   *1.  Plaintiff's* Prima Facie *Case*

"To establish a *prima facie* case under the EPA, [Plaintiff] 'has the burden of proving that (1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; (3) the male employees were paid more under such circumstances.'" *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997) (citing *Tidwell*, 989 F.2d at 409).

The Tenth Circuit does not construe the "equal work" requirement broadly, and has stated that failure to furnish equal pay for "comparable work" or "like jobs" is not actionable.  *Sprague*, 129 F.3d at 1364 (internal citations omitted).  At the same time, if the jobs are substantially equal, they need not be identical.  *E.E.O.C. v. Cent. Kansas Med. Ctr.*, 705 F.2d 1270, 1272 (10th Cir. 1983), rejected on other grounds by *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).  Indeed, "[a]n employer may not 'escape the Act's reach by drawing overly fine distinctions in the tasks at issue.'"  *Id*. (citing *Brennan v. South Davis Community Hospital,* 538 F.2d 859, 861 (10th Cir.1976)).

In determining whether two jobs are substantially equal, the actual job requirements and performance are controlling; that is, job descriptions or titles are not dispositive.  *Id*. at 1273. The Tenth Circuit has explained:

8

> Substantial equality is to be evaluated in terms of skill, effort and responsibility, and "requires a practical judgment on the basis of all the facts and circumstances of a particular case. Skill includes such considerations as experience, training, education, and ability. Effort refers to the physical or mental exertion necessary to the performance of a job. Responsibility concerns the degree of accountability required in performing a job. Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job.

*Id*. at 1272–73 (internal citation omitted). This inquiry requires the Court to make a practical judgment based on all the facts and circumstances of the case and, thus, is a factual determination. As a result, summary judgment on this issue often will be inappropriate. *Mehus v. Emporia State Univ.*, 222 F.R.D. 455, 473–75 (D. Kan. 2004).

In the case at bar, Plaintiff contends that she and Decker perform substantially equal work, despite being placed in different job classifications and occupational series. In support, Plaintiff provides evidence that she and Decker are both responsible for the oversight of the Occupation and Health Program at Los Alamos National Laboratory, and were instructed to split their duties in half, based on interest and experience. (Doc. 60-21) at 3:13; (Doc. 60-5) at 13:16–25, 14:16–25, 15:1–25; (Doc. 60-4) at 26:5–16. Plaintiff and Decker have operated under this model for the duration of their employment together, and are considered co-managers of the program. (Doc. 60-5) at 29:13–25, 30:1–17; (Doc. 60-21) at 3:13; (Doc. 60-8) at 49:21–25, 50:1–6; (Doc. 55-15) at 3. None of the specific oversight areas are considered to be more technical than any others, and both Plaintiff and Decker also are expected to cover all programs and duties in each other's absence. (Doc. 60-4) at 26:1 –25, 27:1, 27:16–20. Defendant does not dispute these facts.

Rather, Defendant argues that, while Plaintiff and Decker have divided up their work and cover for each other when on leave, there remain differences in the kind of work they are required to complete and the skill required to do so. In the 2011 desk audit of Plaintiff's position

as a Safety and Occupational Health Manager, classification experts Varela and Puente-Bekis concluded that, while Plaintiff and Decker both provide oversight to various safety and health programs at LAFO, their individual approach and expertise differs in that Plaintiff provides specialized administrative and program management, while Decker serves as a technical, physical scientist.  (Doc. 55-15) at 4.  The desk audit noted that Plaintiff does not have the same education in physical sciences or years of professional experience involving physical science work which would allow her to lend similar expertise.  (Doc. 55-15) at 4; (Doc. 55-1) at 33:19–25, 34: 1–3, 35: 15–25, 36:1–5, 45:12–17, 49:22–24, 54:2–5; (Doc. 55-2).  Other LAFO personnel have agreed with this assessment.  (Doc 60-18) at 5–9.

However, while it is undisputed that Decker received his undergraduate degree in biological sciences and has more experience working as an industrial hygienist, Plaintiff's evidence suggests that their job duties, as they are actually performed, may nevertheless be substantially equal.  In fact, Decker has stated that he cannot think of a distinction between their job responsibilities.  (Doc. 60-5) at 30:4–17.  To that end, the desk audit acknowledges that "while the two safety positions are similar in occupational safety and health program and management responsibilities, they are not identical."  (Doc. 55-15) at 4.  Varela explained that while Decker's position requires him to apply professional physical science knowledge, there are generally no differences in Decker and Plaintiff's responsibilities.  (Doc. 60-8) at 60:3–5, 14–17.  Puente-Bekis also stated that even though Decker's education and experience enabled him to review certain work that Plaintiff could not, Plaintiff performed other work assignments that Decker did not perform.  (Doc. 55-8) at 156:7–13.  In her words, the positions are "equivalent," and "equally as complex, and equally as responsible for programmatic functions."  *Id.* at 155:18–25, 156:1–14.

Furthermore, Plaintiff disputes the desk audit conclusion and LAFO personnel assertions that she does not apply physical science and engineering expertise to her work.  Specifically, Plaintiff references her work on actual assignments, including identifying a beryllium contamination and proposed rule changes surrounding beryllium.  (Doc. 60-21) at 2, 3.  Decker also states that he sees Plaintiff apply physical science expertise to her work on a daily basis, and it appears that LAFO personnel who have stated that Plaintiff does not apply physical science and engineering expertise in her work are not necessarily familiar with her day-to-day activities and assignments.  (Doc. 60-10) at 10–11; (Doc. 60-18).  Additionally, it is undisputed that Plaintiff has a Q-level security clearance, which Decker does not.  (Doc. 60-21) at 4–6.  As a result, Plaintiff maintains that only she can be deployed to investigate incidents and emergencies, including chemical leaks, in Q-clearance areas, leaving LAFO to rely on her expertise alone in those circumstances.  *Id.*

Although the Court is mindful that Defendant has presented evidence suggesting Decker's job responsibilities involve additional applications of physical science and engineering expertise, whether this renders the two positions not substantially equal is a factual question that the Court cannot answer as a matter of law.  Indeed, it is well-settled that "[t]he jobs being compared need only be substantially equal, not identical." *Thomas v. Bd. of Educ.*, No. 95-4218-SAC, 1997 WL 723437, at *8–9 (D. Kan. Oct. 31, 1997), *aff'd sub nom. Thomas v. Bd. of Educ.*, 166 F.3d 348 (10th Cir. 1998) (citing *E.E.O.C.*, 705 F.2d at 1272; *Thompson v. City of Albuquerque,* 950 F.Supp. 1098, 1103 (D.N.M.1996)).  In addition, "[j]obs may be equal even though one sex is given extra duties if the other sex also performs extra duties of equal skill, effort and responsibility, or if the extra tasks take little time and are of only peripheral importance." *E.E.O.C.*, 705 F.2d at 1273 (citing *South Davis Community Hospital,* 538 F.2d at

862).  In light of the foregoing, Plaintiff has created genuine dispute of material fact as to

whether Plaintiff and Decker's positions are substantially equal and, thus, whether Plaintiff has

established a *prima facie* case under the EPA.

### 2.  *Defendant's Affirmative Defenses*

Having determined that Plaintiff has established a *prima facie* case under the EPA for the

wage disparity between her and Decker, the burden of persuasion now shifts to Defendant to

prove that the disparity in payment is made pursuant to one of the statutory reasons.  These

reasons include: "(1) a seniority system; (2) a merit system; (3) a pay system based on quantity

or quality of output; (4) a disparity based on any factor other than sex."  29 U.S.C. § 206(d)(1).

"[B]ecause the [defendant's] burden in an EPA claim is one of ultimate persuasion, 'in order to

prevail at the summary judgment stage, the [defendant] must prove at least one affirmative

defense so clearly that no rational jury could find to the contrary.'"  *Mickelson*, 460 F.3d at 1311

(citing *Stanziale v. Jargowsky,* 200 F.3d 101, 107 (3rd Cir. 2000)).

Here, Defendant argues that a variety of legitimate reasons other than sex contributes to

the pay differences between Plaintiff and Decker.  Specifically, Defendant points to the fact that

the disparity in pay is due to Decker's greater total years of experience, his longer tenure as a

federal governmental employee, and placement in the Excepted Service pay plan.

"[A]n employee's prior experience is a factor 'other than sex' for purposes of the [EPA]."

*Mickelson*, 460 F.3d at 1312 (citing *Angove v. Williams–Sonoma, Inc.,* 70 F. App'x 500, 508

(10th Cir. 2003)).  Plaintiff does not and cannot dispute that Decker has received his

undergraduate degree in biological sciences, and has significantly more experience than Plaintiff

as an Industrial Hygienist, a Physical Scientist, and as an employee in the federal government.

Indeed, the record reflects that, at the time Decker applied for his position as a Physical Scientist

with LAFO in 2003, he had approximately twenty-two years of experience as an Industrial

Hygienist, nine of which were spent working for the NNSA in its Oakland Operations Office.

(Doc. 55-1) at 33:19–34:3, 35:15–36:13, 49:22–24.   Plaintiff, on the other hand, had

approximately twelve years of experience as an Industrial Hygienist in 2008.  (Doc. 55-7).  *See*

*Pinkard v. Hilti, Inc.*, No. 11-CV-454-JED-PJC, 2013 WL 2634938, at *6 (N.D. Okla. June 11,

2013) (finding that defendant established affirmative defense where higher-paid male employee

had twenty-five years of experience whereas plaintiff had none, and had graduate degree from

prestigious business school and plaintiff did not have such a degree).  By 2008, Decker had

accumulated twenty-seven years of experience, compared to Plaintiff's twelve.  (Doc. 55-2).

Based on this experience and his past salary, Decker was classified in the appropriate pay band.[2]

*See Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015) (citing *Brickey v. Emp'rs*

*Reassurance Corp.,* 293 F.Supp.2d 1227, 1233 (D. Kan. 2003)) (noting "that an individual's

former salary can be considered in determining whether pay disparity is based on a factor other

than sex").

      Furthermore, because of Decker's experience, he was placed in an entirely separate pay

plan.  "A bona-fide, gender-neutral pay classification system constitutes a 'factor other than sex'

under the EPA."  *Riser*, 776 F.3d at 1198.  At the same time, however, the Tenth Circuit has held

that "such a classification system serves as a defense only where any resulting difference in pay

is 'rooted in legitimate business-related differences in work responsibilities and qualifications for

the particular positions at issue.'"  *Id*. (citing *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520,

525 (2d Cir.1992)).  Here, the evidence indicates that Decker was hired for the position of

General Engineer/Physical Scientist under the Excepted Service pay program.  (Doc. 55-2).  The

---

[2] Plaintiff does not dispute Decker's classification or compensation.

Excepted Service program provides for legitimate business-related differences in responsibility and qualifications, as it was enacted by statute in 2002 to "establish more than 300 scientific, engineering, and technical positions in the Administration."  (Doc. 55-3) at 1.  Indeed, the Excepted Service program was specifically designed to "recruit and retain highly qualified scientific, engineering, and technical personnel to support the missions of NNSA. . . . without discriminating based on race, color, national origin, sex, age, religion, marital status, physical or mental disability, sexual orientation, or political affiliation."  *Id*. at 2.

The record further consistently reflects, and Plaintiff does not dispute, that Decker was hired into the Excepted Service program based on his educational foundation in physical sciences and his extensive experience as an Industrial Hygienist, as described above.  Plaintiff contends that her educational background also makes her qualified for the Physical Scientist position in the Excepted Service pay plan.[3]   However, "[g]enerally, 'an employee's own opinions about [her] qualifications do not give rise to a material factual dispute."  *Lewis v. D.R. Horton, Inc.*, 375 F. App'x 818, 826 (10th Cir. 2010) (citing *Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs.,* 165 F.3d 1321, 1329 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)).  Moreover, the fact that Plaintiff may or may not have been qualified for a higher position than her current position has no bearing on the fact that Decker was undisputedly hired as a Physical Scientist in the Excepted Service pay plan based on his extensive experience.  Finally, it is also undisputed that Plaintiff's male predecessor, Dave Barber, was similarly ineligible for the Excepted Service as an Industrial Hygienist, and, like Plaintiff, participated in the DEMO project in connection

---

[3] Again, as noted by Defendant, and undisputed by Plaintiff, any claim that Plaintiff's position was initially improperly classified based on sex was dismissed by the EEOC as untimely.  (Doc. 55-17) at 3 n.3, 9.  Indeed, Plaintiff does not make that claim here.

with that position.  (Doc. 62-3) at 46:19–24, 35:11–21, 36:19–21; 37:5–18.  At the time Barber

was hired, he had twenty-two years of experience as an Industrial Hygienist, six of which were

through contracts with the LAFO—approximately ten years more than Plaintiff.  (Doc. 55-5) at

8:7–19, 42:18.  Thus, the record supports Defendant's assertion that the wage disparity between

Plaintiff and Decker is justified by a reason other than sex.

Plaintiff contends that reasoning articulated in *Raymond v. United States* compels a

different result.  31 Fed. Cl. 514, 517 (1994).  There, the defendant argued that any disparity in

pay between the plaintiff and her male counterparts was due to the operation of the defendant's

merit promotion plan.  *Id*. at 518–19.  In denying summary judgment, the *Raymond* Court

determined that factual disputes remained as to whether the defendant acted consistently with

that merit promotion plan when it denied the plaintiff's applications for several announced

promotions.  *Id*. at 520.

*Raymond* is distinguishable from this case for several reasons. First, the defendant there

argued that the wage disparity between the plaintiff and her male co-workers was due to an

established merit promotion plan, which is not Defendant's affirmative defense here.  Second, in

this case, there are no allegations that Plaintiff was denied announced promotions or was denied

opportunities to be promoted based on an overly-subjective pay classification system.  On the

contrary, the crux of Plaintiff's claim is that she believes she should be paid at the same rate as

Decker because she is qualified for the position of Physical Scientist and performs substantially

equal work.  However, as explained above, given her counterpart's undisputed experience and

background, Defendant has shown that Plaintiff's classification and the disparity in wages is

justified by a reason other than sex.  Third, in *Raymond*, there was evidence in the record that the

defendant had approached a male employee to avoid promoting the plaintiff.  *Id.*  There is no

such evidence here.

Plaintiff further argues that Defendant's affirmative defense is pretextual.  *See Prise v.*

*Alderwoods Grp., Inc.*, 657 F. Supp. 2d 564, 616 (W.D. Pa. 2009) (citing *E.E.O.C. v. Del. Dep't*

*of Health and Soc. Servs.*, 865 F.2d 1408, 1414 (3d Cir. 1989) (explaining that, while plaintiff

does not need to prove discriminatory intent under EPA, showing of intent may be used to

establish that defendant's affirmative defense is pretextual)).  In support of her argument,

Plaintiff continues to emphasize that she disputes the fact that she was originally unqualified for

the Physical Scientist position.  However, as already explained above, it remains undisputed that

Decker has significantly more relevant experience than Plaintiff, which LAFO personnel

consistently refer to as the basis for his placement in the Physical Scientist position.

In addition, Plaintiff points to examples of the way she and other female employees are

treated by male employees and supervisors at LAFO.  Specifically, Plaintiff states that a

supervisor, Kevin Smith, told her that it is difficult to find "technical women," when expressing

his frustrations that no females had applied to a business manager position.  (Doc. 60-12) at 6.

Plaintiff also alleges that her manager, Chris Keilers, used the word "gents" to address an email

sent to two males and copied to other employees, including Plaintiff.  *Id.*   Additionally, Plaintiff

refers to experiences of other female employees at LAFO, including that females received

comments such as "she didn't look like an astrophysicist," and the creation of a "G-rated" lunch

to accommodate a female employee who felt a lunch meeting included inappropriate jokes and

conversations.  *Id.* at 7.

Generally, Plaintiff's statements and the "testimony of other employees about their

treatment by the defendant[, are] relevant to the issue of the employer's discriminatory intent."

*Mickelson*, 460 F.3d at 1315 (citing *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990)).  At the same time, "'isolated [or] ambiguous comments' may be [ ] too abstract to support such an inference."  *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994)); *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1151 (10th Cir. 2008).  Indeed, "isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus."  *Stone*, 210 F.3d at 1140 (citing *Cone*, 14 F.3d at 531).  "A plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the [defendant's unfavorable] decision."  *Id*.

The comments and anecdotes here are insufficient to suggest that Defendant's affirmative defenses are pretextual.  First, none of the comments directed at Plaintiff or any other female employees at LAFO relate to Plaintiff's alleged discriminatory action, i.e. the wage disparity between Plaintiff and Decker.  Likewise, none of the comments relate to a female employee's position relative to other male employees.  Furthermore, the use of the salutation "Gents" in an email addressed to two males, and copied to other employees including Plaintiff, is ambiguous, and does not necessarily imply discriminatory intent.  "Without more, [ ] an employee's subjective belief in a comment's invidious nature also does not support [such] an inference . . . ."  *Adamson*, 514 F.3d at 1151.

Moreover, and again, these instances do not undermine the undisputed fact that Decker has significantly more experience relevant his position, which human resources personnel and LAFO supervisors consistently cite as the reason Decker is placed in his position and is receiving higher pay.  This is especially true considering Plaintiff's male predecessor, Dave Barber, who

had less relevant experience that Decker, but more than Plaintiff, also was not hired as a Physical Scientist and was similarly part of the DEMO pay plan.

In sum, while Plaintiff has shown that she and Decker perform substantially equal work under the EPA, the record consistently shows that the pay disparity between them is justified by Decker's past education and significant experience in related fields with the federal government. As a result, the Court finds that Defendant has carried its burden of demonstrating that the pay disparity between Plaintiff and Decker is based on a factor other than sex. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim under the EPA.

B. *Plaintiff's Title VII Claims*

Plaintiff further alleges claims of sex discrimination under Title VII, based on the pay disparity between Plaintiff and Decker. Finally, Plaintiff also raises a Title VII retaliation claim based on changes in the workplace since she addressed the pay disparity. The Court will address each of these claims separately.

1. *Discrimination*

"Under Title VII, a plaintiff must prove that the employer intentionally discriminated against her because of her sex." *Mickelson*, 460 F.3d at 1311. In cases where a plaintiff relies on circumstantial evidence to demonstrate discriminatory intent, as Plaintiff does here, Courts apply a three-step burden-shifting framework. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–07 (1973)). Under this framework, the plaintiff must first establish a *prima facie* showing of discrimination. *Id.* (citing *McDonnell Douglas,* 411 U.S. at 802). A female plaintiff may do so by showing that she occupies a job similar to that of higher paid males. *Sprague*, 129 F.3d at 1363 (citing *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1019 (11th Cir. 1994)). Upon such a showing, the burden of production then shifts to the defendant "to state a

legitimate, nondiscriminatory reason for its adverse employment action." *Mickelson*, 460 F.3d at 1311 (internal citations omitted). At that point, "summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Id.* (internal citations omitted).

Because a Title VII claim only requires the defendant to "proffer a legitimate, nondiscriminatory reason for the challenged action," Plaintiff's Title VII disparate pay claim fails for the same reasons as her EPA claim. *Id.* at 1312. Indeed, as discussed above, Defendant has proven that the pay disparity is based on factors other than sex, and Plaintiff has not created a genuine dispute as to whether the factors are pretextual. Thus, Defendant similarly is entitled to summary judgment on Plaintiff's Title VII discrimination claim.

### 2. Retaliation

Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). In analyzing retaliation claims under Title VII, courts apply the same three-part burden-shifting framework used to analyze discrimination claims. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008) (citing *McDonnell Douglas*, 411 U.S. 792). In order to establish a *prima facie* case of retaliation, Plaintiff must show "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Id.* at 1212 (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

Defendant argues that it is also entitled to summary judgment on Plaintiff's retaliation claim on the ground that Plaintiff has presented no evidence of an adverse employment action. Plaintiff responds that she has presented evidence of adverse employment actions in the way her work has been assigned after filing her EEOC complaint.

"To be materially adverse, an action must be sufficient to 'dissuade [ ] a reasonable worker from making or supporting a charge of discrimination.'" *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (citing *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  "While the employer's conduct need not affect the terms and conditions of employment," *id*. (citing *Burlington Northern*, 548 U.S. at 64), the injury must nevertheless rise to an objective "level of seriousness."  *Id*. (citing *Williams v. W.D. Sports, N.M., Inc.,* 497 F.3d 1079, 1087 (10th Cir. 2007).  As a result, "'reassignment of job duties is not automatically actionable.'"  *McGowan v. City of Eufala*, 472 F.3d 736, 742–43 (10th Cir. 2006) (citing *Burlington Northern*, 548 U.S. at 71).  Indeed, "[a]n adverse employment action is a '*significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a significant change in benefits.'"  *Daniels*, 701 F.3d at 635 (citing *Piercy v. Maketa,* 480 F.3d 1192, 1203 (10th Cir. 2007)).

Here, Plaintiff states that, after making her equal pay and discrimination allegations, supervisors changed the way they delegated assignments to Plaintiff and Decker.  Specifically, the Los Alamos Site Office Manager emailed Decker directly, copying Plaintiff, and giving Decker direct assignments, whereas previously, the Site Manager left it to Plaintiff, Decker, and their direct supervisor to delegate tasks.  (Doc. 60-12) at 2:9.  In addition, Decker has been directly assigned to other projects and assessments, which Plaintiff and Decker would normally

share.  (Doc. 60-21) at 2:10.  Finally, Plaintiff states that when her manager, Chris Keilers is on

leave, only Decker is asked to cover his duties in his absence, unlike before when Plaintiff and

Decker would usually share that duty.  *Id.*

However, these changes in the way assignments are delegated or, to the extent alleged,

substantive changes in assignments are made, are not sufficiently material to constitute adverse

actions.  Plaintiff has neither described nor provided objective evidence of a resulting material

disadvantage which would allow a jury to find that these assignment changes constituted

materially adverse actions.  *Wheeler v. BNSF Ry. Co.*, 418 F. App'x 738, 751 (10th Cir. 2011)

(citing *Semsroth v. City of Wichita*, 555 F.3d 1182, 1185 (10th Cir. 2009)) (holding that without

objective evidence of material disadvantage, jury could not reasonably find that change in work

assignments was materially adverse action).  Plaintiff has identified no differences in pay or

benefits, or indicated that these changes have made her work more arduous or prevented her

from satisfactorily performing her duties.  *McGowan v. City of Eufala*, 472 F.3d 736, 742–43

(10th Cir. 2006) (finding that employer's failure to reassign plaintiff to day shift was not

materially adverse, where night shift "offered no differences in pay and benefits, nor was the

night shift more arduous"); *Daniels*, 701 F.3d at 640 (noting that fact plaintiff continued to

perform duties satisfactorily is evidence that alleged actions were not materially adverse, since

they could not be serious enough to dissuade a reasonable worker from filing or pursuing

discrimination claim).

Furthermore, the Tenth Circuit has previously found that failure to receive work

commensurate with a plaintiff's experience, even aggregated with other claims such as being

moved to an isolated office, not being offered a higher paying position, and not receiving

appropriate recognition for certain work, does not constitute an adverse action for purposes of

retaliation.  *Stover v. Martinez*, 382 F.3d 1064, 1075 (10th Cir. 2004).  Indeed, "[m]ere inconveniences or alterations of job responsibilities do not constitute adverse employment actions."  *Id*. (citing *Annett v. University of Kansas*, 371 F.3d 1233, 1239 (10th Cir. 2004)).

For these reasons, Plaintiff has failed to provide evidence that any change in the way she receives her assignments, or any change in her duties generally, is sufficiently serious to constitute an adverse action. Accordingly, Defendant similarly is entitled to summary judgment on Plaintiff's retaliation claims.

**V.   Conclusion**

In light of the foregoing, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claims of discrimination under the EPA and Title VII, and retaliation under Title VII.

IT IS THEREFORE ORDERED that:

(1)  Defendant's Motion for Summary Judgment, (Doc. 55), is GRANTED; and

(2)  Plaintiff's Complaint will be DISMISSED WITH PREJUDICE.

_____
UNITED STATES DISTRICT JUDGE